UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOSEPH IMBRIANO,

                Plaintiff,

-against-                                      1:24-CV-293 (LEK/DJS)

MARK MURRAY, *et al.*,

                Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Joseph Imbriano commenced this action pursuant to 42 U.S.C. § 1983 by filing a complaint asserting claims against Mark Murray, Bobbie Murray-Jordan, Curtis Rich, Daniel Simon, Tyrel Tryon, and Crystal Vargas arising out of events on March 4, 2021. Dkt. No. 1 ("Complaint"). On June 10, 2024, Defendants filed a motion to dismiss the Complaint. Dkt. No. 13 ("Motion"). Plaintiff filed a response and a cross-motion to amend the Complaint and extend time to serve Defendant Crystal Vargas. Dkt. No. 15-4 ("Response" or "Cross-Motion"). Plaintiff also filed a proposed amended complaint. Dkt. No. 15-2 ("Proposed Amended Complaint" or "PAC"). Defendants filed a reply in support of their Motion and in opposition to Plaintiff's Cross-Motion. Dkt. No. 22 ("Reply").[1]

For the reasons that follow, Defendants' Motion is granted, and Plaintiff's Cross-Motion is denied.

---

[1] Plaintiff filed a reply in support of his Cross-Motion. Dkt. No. 23. However, under Local Rule 7.1(c), "[t]he cross-moving party may not reply in further support of its cross-motion without the Court's prior permission." The Court gave no such permission to Plaintiff. Accordingly, the Court will not consider Plaintiff's reply.

II.  BACKGROUND

    A.  The Complaint

Plaintiff alleges the following in the Complaint. Plaintiff is a 59-year-old employee at the New York State Office of General Services, located at the Empire State Plaza in Albany, New York. Compl. ¶ 17. Defendants are New York State Troopers. *Id.* ¶ 12. On March 4, 2021, Plaintiff "was leaving work at the Office of General Services through the [c]oncourse under the Empire State Plaza." *Id.* ¶ 18.

Before Plaintiff left work, at approximately 3:55 P.M., eight to ten minors ran through the concourse underneath the Empire State Plaza, "engaging in minor physical altercations" and "running from a number of New York State Troopers." *Id.* ¶ 20. Soon after, Defendants "herded the group of juveniles out of the [c]oncourse, up the stairs, and out . . . the Madison Avenue doors . . . to ensure the safety of the occupants of the [c]oncourse." *Id.* ¶ 28. Defendants did not detain or arrest the minors. *Id.* ¶ 28, 134.

Four minutes later, Plaintiff exited through the Madison Avenue doors. *Id.* ¶ 33. Plaintiff "was immediately confronted with the commotion and confrontation" between the minors and Defendants, *id.* ¶ 34, and "began to film the juveniles with his iPhone for several minutes," *id.* ¶ 36. "Realizing that they were being filmed, [] two juveniles surrounded [P]laintiff" and one of them shoved him "off the sidewalk curb and into the traffic on Madison Avenue." *Id.* ¶ 44. Once Plaintiff returned to the sidewalk, the minors "continued trying to come at and punch, hit, or otherwise strike [P]laintiff." *Id.* ¶ 45. Another minor "attempted to grab" Plaintiff's phone, "kicked at him," and struck Plaintiff's right arm. *Id.* ¶ 46.

Defendant Murray then approached Plaintiff "and the two juveniles attacking him." *Id.* ¶ 47. Defendant Murray "pushed [Plaintiff] back towards the flagstone wall . . . and shoved him

toward the wall." *Id.* The minors "continued trying to come at and punch, hit, or otherwise strike" Plaintiff. *Id.* ¶ 48. Defendant Murray "kept his hand on [Plaintiff]'s body and shoulder and pushed him" towards the concourse doors. *Id.* ¶ 50. Defendant Murray "pushed [Plaintiff] towards the metal call box attached to the flagstone wall near the revolving door." *Id.* ¶ 53. Defendant Murray "kept his hands on [Plaintiff] for the duration of the incident." *Id.* ¶ 85.

As a result of Defendant Murray's actions, Plaintiff "struck his head on the metal call box twice, initially striking the right side of his head on the metal call box and then, after being stunned by the first hit, his head went back and struck the metal call box a second time." *Id.* ¶ 54. One of the minors then "threw a punch at [Plaintiff] that struck him on the top of his head on the left upper side of it." *Id.* ¶ 56. Plaintiff "sustained a concussion and was diagnosed with post-concussion syndrome." *Id.* ¶ 55.

In the Complaint, Plaintiff asserts four claims: an excessive force claim against Defendant Murray in violation of the Fourth and Fourteenth Amendments, *id.* ¶ 59, and three failure to protect claims, *id.* ¶¶ 83, 98, 124.[2]

### B. The Parties' Motions

In their Motion, Defendants argue that Plaintiff's claims should be dismissed because Plaintiff failed to state a claim upon which relief can be granted. Mot. at 4–13. Defendants raise other grounds for dismissing the Complaint, namely lack of personal involvement, sovereign immunity, and qualified immunity. *Id.* at 13–15. Finally, Defendants move to dismiss the claims

---

[2] In other sections of the Complaint, Plaintiff suggests that his fourth claim is an excessive force claim. *See* Compl. ¶ 5. Elsewhere in the Complaint, Plaintiff describes his fourth claim as a failure to protect claim. *See id.* ¶ 136; *see also* Resp. at 12. The Court construes Plaintiff's fourth claim as a failure to protect claim.

3

against Defendant Vargas under Federal Rule of Civil Procedure 12(b)(2) for failure to secure personal jurisdiction against her. *Id.* at 16.

In his Response, Plaintiff argues that he sufficiently pled his claims and that personal involvement, qualified immunity, and personal jurisdiction do not preclude liability. Resp. at 1–23. With respect to Defendants' sovereign immunity argument, Plaintiff withdraws the claims against Defendants in their official capacity. *Id.* at 17. Plaintiff then requests leave to amend the Complaint to "provide further clarification of the acts and omissions of the [D]efendants, elaborate on the injuries received by [P]laintiff," and to "attach the security camera footage" from the incident. *Id.* at 24. Plaintiff's Proposed Amended Complaint presents video exhibits and details about his injuries, but it leaves the factual allegations the same in all relevant respects. *Compare* PAC ¶¶ 1–77 *with* Compl. ¶¶ 1–57.

In their Reply, Defendants argue that the Court should deny Plaintiff leave to file the Proposed Amended Complaint because it would be futile. *See* Reply at 11.

## III. LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the alleged misconduct].” *Id.* at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court has stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. *Id.* at 679.

### B. Motion to Amend a Complaint

"Leave to amend should be 'freely give[n] . . . when justice so requires' [under Federal Rule of Civil Procedure 15(a)(2)], but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)). "A proposed amendment to a complaint is futile when it 'could not withstand a motion to dismiss.'" *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015) (quoting *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

When determining if an amendment is futile due to a potential motion to dismiss, the proposed pleading must "be judged by the same standards as those governing the adequacy of a filed pleading" if it were attacked by a motion to dismiss. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

5

## IV.   DISCUSSION

### A. Motion to Dismiss

#### 1. *Excessive Force Claim*

Defendants first contend that Plaintiff failed to state an excessive force claim against Defendant Murray in violation of the Fourth and Fourteenth Amendments. Mot. at 4–7. Assuming *arguendo* there was a plausibly alleged seizure, the Court considers whether Defendant Murray's use of force was reasonable. All excessive force claims that arise in the context of a seizure "should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[3] *Graham v. Connor*, 490 U.S. 386, 396 (1989). When conducting this reasonableness inquiry, the Court must ask "whether the officers' actions are 'objectively unreasonable' in light of the facts and circumstances confronting them." *Id.* at 397. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [plaintiff's] constitutional rights." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Courts have found it reasonable for officers to use appropriate force to break up fights. *See Malave*, 2021 WL 3603433, at *6 ("Pushing the unrelenting [plaintiff] in an effort to end a chaotic fight between students was reasonable.");

---

[3] Plaintiff also brought his excessive force claim under the Fourteenth Amendment. Compl. ¶ 59. However, analyzing an excessive force claim under the Fourteenth Amendment uses the same reasonableness inquiry as that of the Fourth Amendment. *See Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464, 466 n.2 (2021) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

*Quinones v. Rollison*, No. 18-CV-1170, 2020 WL 6420181, at *4 (S.D.N.Y. Nov. 1, 2020) (finding that an officer's use of a chemical agent to stop two inmates from fighting was reasonable).

Here, Defendant Murray's alleged use of force against Plaintiff was reasonable. Defendant Murray used force in an attempt to remove Plaintiff from an altercation with the minors. Indeed, the Complaint alleges that before Defendant Murray engaged with Plaintiff, four minors were attacking Plaintiff. Compl. ¶ 46. Defendant Murray then approached Plaintiff and the two juveniles attacking him. *Id.* ¶ 47. When Defendant Murray pushed Plaintiff towards the wall, the minors "continued trying to come at and punch, hit, or otherwise strike [P]laintiff. *Id.* at ¶ 48. After Plaintiff's head struck the metal call box from Defendant Murray's push, one of the minors struck Plaintiff in the head. *Id.* ¶ 56. Based on these allegations, Defendant Murray's push was an attempt to separate parties engaged in an altercation. *See Malave*, 2021 WL 3603433, at * 6 (finding that a push that was "quite forceful" reasonable because the officer did so in an effort to separate two fighting parties). Even drawing all inferences in favor of Plaintiff, the Complaint portrays Defendant Murray's conduct as a "split-second judgment" to deescalate the commotion in the concourse. *See Graham*, 490 U.S at 396. This conduct was reasonable considering the circumstances. Because Defendant's use of force was reasonable, Plaintiff failed to allege a violation of the Fourth or Fourteenth Amendments. Plaintiff's excessive force claim is dismissed for failure to state a claim upon which relief may be granted.

2. *Failure to Protect Claims*

Defendants also argue that Plaintiff's failure to protect claims should be dismissed because there is no special relationship between Plaintiff and Defendants. Mot. at 9–13.

For a plaintiff to sufficiently allege a failure to protect claim from violence by private actors, they must first show that the State had an obligation to protect them. Indeed, "a State's failure to protect an individual against private violence simply does not constitute a violation of the [Fourteenth Amendment] Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). This is because "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195. However, there are "exceptional circumstances" where "a governmental entity may have a constitutional obligation to provide such protection, either because of a special relationship with an individual . . . or because the governmental entity itself has created or increased the danger to the individual." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993).

a. Plaintiff's Second Claim against Defendant Murray

Defendants contend that no special relationship exists between Defendant Murray and Plaintiff because Defendant Murray did not seize Plaintiff. Mot. at 7–9. Regardless of whether Plaintiff was seized, however, the Court finds that a seizure alone is not sufficient to create a special relationship. Thus, Plaintiff failed to plausibly allege a special relationship or another "exceptional circumstance[]" such that Defendant Murray had a duty to protect Plaintiff. *Ying Jing Gan*, 996 F.2d at 533.

A special relationship is created due to the "State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty." *DeShaney*, 489 U.S. at 200. "Special relationships that have been recognized to give rise to a governmental duty to protect against third-person attacks have included custodial relationships such as a prison and inmate or a mental institution and

8

involuntarily committed patient, and the relationship between a social service agency and foster child." *Ying Jing Gan*, 996 F.2d at 533 (citing *DeShaney*, 489 U.S. at 198–99). Although a seizure is a restraint on personal liberty, *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995), it does not rise to the level of custody the Supreme Court envisioned in *DeShaney*. *See Campbell v. Brentwood Union Free School Dist.*, 904 F. Supp. 2d 275, 280 ("The touchstone of the 'special relationship' exception to the *DeShaney* rule is the requirement that the state has somehow placed the victim within its custody … includes imprisonment and involuntary institutionalization."). Here, Defendant Murray's push in a public area is far removed from the level of restraint to personal liberty that occurs with incarceration or institutionalization. Thus, Defendant Murray and Plaintiff were not in a special relationship that triggered a duty to protect. Plaintiff fails to plausibly allege his failure to protect claim against Defendant Murray. Plaintiff's second claim is dismissed.

b. Plaintiff's Third Claim against Defendants

Defendants argue that Plaintiff did not allege a special relationship between Plaintiff and Defendants because there is no general duty of protection afforded to Plaintiff. Mot. at 10. Specifically, Defendants refute Plaintiff's assertion that they "had a duty to protect by virtue of a special relationship vis-à-vis all of the intended occupants of the Empire State Concourse." *Id.* The Court agrees. Indeed, the Supreme Court expressly rejected the notion of a general duty to protect. *See DeShaney*, 489 U.S. at 195–96 ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against

invasion by private actors."). Moreover, Plaintiff cites to no case law that supports his proposition.[4] *See* Resp. at 12–13. Plaintiff's third claim is dismissed for failure to state a claim.

### c. Plaintiff's Fourth Claim against Defendants

Defendants argue that Plaintiff's fourth claim should be dismissed because their conduct did not create the danger that caused Plaintiff harm. Mot. at 12.

As noted above, a governmental entity may have a constitutional obligation to provide protection if it "created or increased the danger to the individual." *Ying Jing Gan*, 996 F.2d at 533. This means that "an allegation that the officers in some way had assisted in creating or increasing the danger" to a plaintiff would implicate their Fourteenth Amendment rights. *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993). The Second Circuit "read *Dwares* to establish that the Due Process Clause may be violated when police officers' *affirmative conduct*—as opposed to *passive* failures to act—creates or increases the risk of private violence, and thereby enhances the danger to the victim." *Okin v. Village of Cornwall-on-Hudson Police Dept.*, 577 F.3d 415, 428 (2d Cir. 2009). Courts have found police officers to have engaged in affirmative conduct when they indicated to assailants that they can assault others without repercussions, *see Dwares*, 985 F.2d at 99, or when they allow third parties to shoot a suspect, *Hemphill v. Schott*, 141 F.3d 412, 419 (2d Cir. 1998). Conversely, mere failure to intervene is not affirmative conduct. *See DeShaney*, 489 U.S. at 191 (holding that social workers did not violate the Due Process Clause when they failed to intervene when a father

---

[4] Plaintiff argues that whether there is a special relationship between Plaintiff and Defendants is a question of fact. *See* Resp. at 13. This is incorrect. The question of whether "a relationship triggers a duty on the part of a given governmental official to provide protection against an attack by private actors is a matter of law." *Ying Jing Gan*, 996 F.2d at 534.

severely abused his young son); *see also Star v. Burlington Police Dep't*, 1999 WL 710235, at *1 (2d Cir. Sept. 2, 1999) (holding that a police department did not violate the Due Process Clause when they failed to respond to the plaintiff's complaints that a private party was going to harm her).

Here, Plaintiff contends that Defendants created the danger because they did not arrest the minor in the bright green hat. Compl. ¶ 134. However, failure to detain an individual is passive conduct, not affirmative conduct, which the Second Circuit has held does not give rise to a failure to protect claim. *See Okin*, 577 F.3d at 548. Thus, Defendants did not have a duty to protect Plaintiff due to their failure to arrest the minors. Accordingly, Plaintiff's fourth claim is dismissed for failure to state a claim.

### 3.  Additional Grounds for Dismissal

Defendants raise additional arguments for dismissing Plaintiff's Complaint, namely personal involvement, sovereign immunity, qualified immunity, and personal jurisdiction.[5] Mot. at 13–16. Because the Court dismisses Plaintiff's claims on the aforementioned grounds, the Court need not address these issues.

### B.  Cross-Motion to Amend the Complaint

Plaintiff's Proposed Amended Complaint largely resembles the Complaint. The most significant changes to the Complaint are the addition of video exhibits, references to the exhibits,

---

[5] "[I]n cases such as this one with multiple defendants—over some of whom the court indisputably has personal jurisdiction—in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, we may address first the facial challenge to the underlying cause of action and, if we dismiss the claim in its entirety, decline to address the personal jurisdictional claims made by some defendants." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 247 n.17 (2d Cir. 2012). The Court declines to address the personal jurisdiction claim made by Defendant Vargas. Plaintiff's cross-motion to extend time for service on Defendant Vargas is therefore moot.

and additional details about Plaintiff's injuries. The video exhibits merely provide evidentiary support to facts the Court already assumed to be true. These facts, as described above, are insufficient to plausibly state a claim. Since the proposed changes do not cure the deficiencies in the Complaint, Plaintiff's Cross-Motion to amend the Complaint is denied.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss, Dkt. No. 13, is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Cross-Motion to amend and extend time for service on Defendant Vargas, Dkt. No. 15, is **DENIED**; and it is further

**ORDERED**, that the Complaint, Dkt. No. 1 is **DISMISSED with prejudice.** The Court respectfully directs the Clerk to close this case; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   January 7, 2025
         Albany, New York

LAWRENCE E. KAHN
United States District Judge

12